Presented to the Court by the foreman of the
Grand Jury in open Court, in the presence of
the Grand Jury and FILED in the U.S.
DISTRICT COURT at Seattle, Washington.

May 25, 20 11

WILLIAM M. McCOOL, Clerk

By H. Brent Zachery, Deputy

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NO. CR11-5284 RBL

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ALFRED CHAN and | ) |
| JUDY CHAN, | ) |
| | ) |
| Defendants. | ) |

**INDICTMENT**

The Grand Jury charges that:

**Counts 1-20**
**(Health Care Fraud)**

**I.      Background**

At all times relevant to this Indictment:

**A.      Alfred Chan and Judy Chan**

1.      ALFRED CHAN has been licensed in Washington State as a medical doctor specializing in hematology and oncology in Lakewood, Washington.

2.      ALFRED CHAN and JUDY CHAN owned the Alfred H. Chan, M.D., P.C. Professional Clinic (hereafter "Clinic"), located at 6323 111th Street SW, Lakewood, Washington, where ALFRED CHAN provides medical services.  Washington State corporate records list ALFRED CHAN as the President of Alfred H. Chan, M.D., P.C. JUDY CHAN is listed as the Registered Agent and the Vice President for Alfred H. Chan, M.D., P.C.

UNITED STATES v. CHAN - INDICTMENT

-1-

3.      According to the Washington State Department of Health, ALFRED CHAN obtained Washington State physician and surgeon license number xxxxxxxxxx, which is currently active.  ALFRED CHAN obtained Medicare Provider Identification Numbers xxxxxxxx and xxxxxxxx, Unique Provider Identification Number ("UPIN") xxxxxx, and National Provider Identifier ("NPI") xxxxxxxxxx.  Dr. Chan obtained Washington State Medicaid provider billing numbers xxxxxxx and xxxxxxx.

4.      JUDY CHAN is ALFRED CHAN's wife.  JUDY CHAN has served as the Clinic's vice-president, bookkeeper, and office manager.  JUDY CHAN handled all the Chans' personal and business finances, and submitted claims to Medicare and other insurance companies during certain time periods covered by this Indictment.

**B.      The Health Care Benefit Programs**

5.      A "health care benefit program," as defined under 18 U.S.C. § 24(b), includes any public or private plan or contracts affecting interstate and foreign commerce "under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract."  The Medicare Part B Program under the Social Security Act, 42 U.S.C. §§ 301 et seq. (Medicare), and the Washington State Medicaid Program under Title XIX of the Social Security Act ("Medicaid"),  and TRICARE, are each a "health care benefit program."

6.      Patients covered by the health care benefit programs are called "beneficiaries."  Physicians who see and treat beneficiaries are called "providers."

7.      Many of the patients seen by ALFRED CHAN at the Clinic were covered by various federal government insurance programs, including but not limited to, Medicare, Medicaid, and TRICARE.  Other patients were covered by non-government sponsored health care benefit programs including, but not limited to, Regence Blue Shield, Premera Blue Cross, and Molina Healthcare.  Some patients were covered by both government and non-government programs as the primary and secondary payers.

//

UNITED STATES v. CHAN - INDICTMENT

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

### 1. Medicare

8.    The Medicare Program, as established by the Social Security Act, 42 U.S.C. §§ 301, et seq., provides medical insurance benefits for individuals typically aged 65 years or older and for certain disabled individuals. Medicare Part A ("Part A"), the Basic Plan of Hospital Insurance, covers the cost of inpatient hospital services and post-hospital nursing facility care. Medicare Part B ("Part B"), the Voluntary Supplemental Insurance Plan, covers the cost of physicians' services, including visits to doctors' offices, if the services are medically necessary and directly or personally provided by the physician. Medicare Part D ("Part D"), the Medicare Prescription Drug Benefit, provides coverage in varying degrees for prescription drugs.

9.    The Medicare Program is administered by the Centers for Medicare and Medicaid Services ("CMS") through the Medicare Administrative Contractors ("MAC"). The MACs are private insurance companies contracted by CMS to process and pay individual Medicare claims. The Medicare Part B Program, for all times relevant to this Indictment, was administered in Washington State by Noridian Administrative Services ("Noridian"), which, pursuant to its contract with HHS, receives, adjudicates, and pays claims submitted by physicians and suppliers of medical services.

10.    Medicare Part B reimburses 80 percent of the Medicare physician fee schedule of most medically necessary services personally performed by a licensed medical doctor. In order to submit claims to Medicare carriers for reimbursement, health care providers must first obtain a National Provider Identification number ("NPI") that remains with the physician throughout his/her career. Until the NPI was instituted in 2008, each provider was required to obtain a Unique Provider Identification Number ("UPIN"). Providers that wish to be paid directly by Medicare are allowed to become "participating" providers, and therefore must accept assignment on Medicare claims. To qualify as a participating provider, the provider must, among other things, agree to abide by the pertinent statutes and regulations.

//

1         11.    Under Medicare Part B, billings for services performed by licensed doctors

2    and other health care providers in Washington State are submitted as claims to Noridian

3    either electronically, or via a paper claim known as the Health Insurance Claim Form or

4    "CMS 1500." Both methods of filing Medicare Part B claims require the submission of

5    certain information relating to the services provided, including (a) patient identifying

6    information, (b) the type of service provided, (c) a modifier to further describe said

7    service (if applicable), (d) the date of service, (e) the charge for the service, (f) diagnosis,

8    (g) a certification by the provider as to the medical necessity of rendering the service, and

9    (h) the name and/or provider identification number of the performing provider.

**2.    The Medicaid Program**

11        12.    The Medicaid program was created in 1962 when Title XIX was added to

12   the Social Security Act. Medicaid is a public assistance program covering medical

13   expenses for low-income patients. Funding for Medicaid is shared between the federal

14   government and those state governments that choose to participate in the program. The

15   portion of Medicaid costs paid by the federal government is known as the Federal

16   Medical Assistance Percentage ("FMAP") and is determined annually. In Washington

17   State, during the time period relevant to this investigation, the Medicaid program was

18   funded approximately 50% with federal funds and 50% with state funds. At all times

19   relevant to this Indictment, Medicaid rules at issue in this investigation were substantially

20   similar in all material respects to those of the Medicare program.

21        13.    In the State of Washington, the Medicaid program is administered by the

22   Health and Recovery Services Administration ("HRSA"), which is a sub-agency of the

23   Department of Social and Health Services ("DSHS"). HRSA handles all aspects of the

24   administration of the Medicaid program, including contracting health care providers,

25   processing claims, making payments to providers, and conducting audits of providers.

26        14.    The Washington Medicaid Program is a "health care benefit program"

27   within the meaning of 18 U.S.C. § 24(b).

28   //

### 3.     TRICARE

15.     TRICARE is a health care program administered by the Department of Defense pursuant to 10 U.S.C. §§ 1071, et seq.. TRICARE provides medical benefits to the spouses and unmarried children of active duty service members and to service retirees and reservists on active duty.

16.     TRICARE is a "health care benefit program" within the meaning of 18 U.S.C. § 24(b).

### 4.     Private Insurance Companies

17.     ALFRED CHAN and JUDY CHAN received payments from various private insurance companies, to include, Lifewise, Regence Blue Shield, Premera Blue Cross, and Molina Healthcare.

18.     All of the private insurance companies to which ALFRED CHAN and JUDY CHAN submitted claims for reimbursement and received payment for items or services provided, are "health care benefit programs" within the meaning of 18 U.S.C. § 24(b).

## II.     Relevant Billing and Coding Requirements and Provisions

### A.     CPT and JCodes

19.     The Medicare Part B program requires that the type of service performed be identified on the claim using the Healthcare Common Procedure Coding System ("HCPCS"). HCPCS is divided into two (2) principal subsystems, referred to as Level I and Level II of the HCPCS. Level I is comprised of the American Medical Association's Current Procedural Terminology ("CPT") Codes. CPT Codes are five (5) digit codes intended to accurately identify, simplify, and standardize billing for the medical services and procedures furnished by providers. Related services are assigned sequential CPT Codes with different levels of complexity. For example, the following five codes apply to an office or outpatient Evaluation & Management ("E&M") visit at a physician's office for an established patient: CPT Codes 99211, 99212, 99213, 99214, and 99215. As the code becomes higher, the level of service and the reimbursement proportionally increase.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   A service billed at a higher level code results in a higher payment than a service billed

2   with a lower level code; thus, for example, a provider is paid more for services associated

3   with CPT Code 99215 than CPT Code 99213.

4        20.    Level II of the HCPCS is comprised of codes used primarily to identify

5   products, supplies, and services not included in the CPT Codes, such as durable medical

6   equipment and supplies.  HCPCS Level II Codes are alpha-numeric codes consisting of

7   one letter followed by four (4) numbers.  The HCPCS Level II Codes relevant to this

8   Indictment are hereafter referred to as "JCodes."  Each JCode describes a drug and an

9   associated dose of the drug.  For example, J1750 represents an injection of 50mg of Iron

10  Dextran.  If a beneficiary was treated with a 100mg injection of Iron Dextran, the claim

11  should be submitted for two (2) Units of J1750.

12      **B.**     **Drug Infusions and Injections**

13       21.    According to the 2006-2009 CPT Manuals, specific CPT codes are used to

14  indicate infusions and injections of drugs based on the duration of the administration, and

15  separate codes are used to indicate infusions lasting more than one hour.

16       22.    According to the 2006-2009 CPT Manuals, an intravenous "push" is an

17  injection during which the provider administering the drug is continually present during

18  administration to observe the patient, or when an infusion lasts 15 minutes or less.  A

19  specific CPT code is used to indicate an initial intravenous "push" of a drug, and a

20  separate code is used to indicate a secondary or subsequent "push."

21      **C.**    **Single Dose Vials**

22       23.    Medicare rules require providers to bill the number of drug units that reflect

23  the actual dosage provided to the patient, except in certain limited circumstances.  One

24  such circumstance is discarded drugs from a single use vial or single use package.  In this

25  instance, Medicare provides full payment for the packaged amount of drug, to include the

26  amount of drug administered to the patient and the remaining contents of the vial, which

27  are discarded.

28  //

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

24.     The Medicare Claims Processing Manual, Pub. 100-04, Chapter 17, Section 40 states:

> CMS encourages physicians, hospitals and other providers to schedule patients in such a way that they can use drugs or biologicals most efficiently, in a clinically appropriate manner. However, if a physician, hospital or other provider must discard the remainder of a single use vial or other single use package after administering a dose/quantity of the drug or biological to a Medicare patient, the program provides payment for the amount of drug or biological discarded along with the amount administered, up to the amount of the drug or biological as indicated on the vial or package label.

25.     If a provider is able to do so, he/she may dose several patients from a single dose vial. If this occurs, the provider should bill Medicare for the amount of drug administered to each patient. The provider cannot, however, dose multiple patients from the same single dose vial and then bill Medicare for a full single dose vial for each patient. Dosing multiple patients from the same single use vial and billing Medicare for the entire vial for each patient falsely indicates to Medicare that each patient was dosed from a separate single dose vial and the remaining contents of each vial were discarded.

26.     Section 40 of the Medicare Claims Processing Manual provides the following example to illustrate the proper billing of single use drugs:

> A provider schedules three Medicare patients to receive Botulinum Toxin Type A (Botox) on the same day within the designated shelf life of the product. Currently, Botox is available only in a 100-unit size. Once Botox is reconstituted, it has a shelf life of only four hours. Often, a patient receives less than a 100-unit dose. The provider administers 30 units to each of the three patients. The remaining 10 units that must be discarded are billed to Medicare on the account of the last patient. Therefore, 30 units are billed on behalf of the first patient seen and 30 units are billed on behalf of the second patient seen. Forty units are billed on behalf of the last patient seen because the provider had to discard 10 units at that point.

27.     The term "up-coding" generally describes the process by which a health care provider submits a claim for a higher level of service than was actually performed, a claim for a greater duration of service than was provided, or a claim for a greater amount of a drug than was actually administered. Such a practice results in a health care provider receiving a higher payment than was due for the service actually performed.

//

//

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**D.     Claim Form**

28.     Pursuant to the requirements detailed on the reverse side of the CMS-1500 claim form, by signing the claim, the provider certifies that the services shown were medically necessary and were personally furnished by the provider or furnished by the provider's employee.  Additionally, a notice on the reverse side of the CMS-1500 claim states, "[a]ny person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."  In order to bill electronically, all Medicare providers must enroll and make a certification similar to that on the CMS-1500 claim form.

29.     CMS requires that providers apply to be Medicare providers by filling out the Provider Enrollment Application.  ALFRED CHAN filled out and signed an application in 1998 and then again in 2008 when he obtained his NPI number.

30.     ALFRED CHAN's Medicare provider enrollment application dated November 10, 1998, contains the following certification statements:

> 4.     I am familiar with and agree to abide by the Medicare or other federal health care programs laws, regulations and program instructions that apply to my provider/supplier type.  The Medicare laws, regulations and instructions are available through the Medicare Contractor.  I understand that the payment of a claim by Medicare or other federal health care programs is conditioned on the underlying transaction complying with such laws, regulations and program instructions (including the anti-kickback statute and the Stark law), and on a provider/suppler being in compliance with any applicable conditions of participation in any federal health care program.
>
> 9.     I will not knowingly present or cause to be presented a false or fraudulent claim for payment by the Medicare or other federal health care programs, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

31.     The Medicare Enrollment Application signed by ALFRED CHAN when he obtained his NPI number shows ALFRED CHAN's signature below Section 14 (Penalties for Falsifying Information) and Section 15 (Certification Statement), dated April 17, 2008.  Section 14 explicitly lays out the various statutory penalties for furnishing false information to the Medicare program.

Included in Section 15 are the following certifications:

> 3.     I have read and understand the Penalties for Falsifying Information, as printed in this application. I understand that any deliberate omission, misrepresentation, or falsification of any information contained in this application or contained in any communication supplying information to Medicare . . . may be punished by criminal, civil or administrative penalties

> 8.     I will not knowingly present or cause to be presented a false or fraudulent claim  for payment by Medicare and will not submit claims with deliberate ignorance or  reckless disregard of their truth or falsity.

## III.    The Scheme to Defraud

32.     Beginning on a date unknown, but no later than on or about April 1, 2006, and continuing up to and including April 30, 2009, at Lakewood, within the Western District of Washington, defendants ALFRED CHAN and JUDY CHAN knowingly and willfully executed, attempted to execute, caused the execution of, and aided and abetted, a scheme to defraud Health Care Benefit Programs, and to obtain by means of false and fraudulent pretenses and representations and promises, money owned by and under the custody or control of Health Care Benefit Programs, in connection with the delivery of health care benefits, items or services, by the manner and means described in this Indictment, in violation of Title 18, United States Code, Sections 1347 and 2.

### A.     The Essence of the Scheme to Defraud

33.     The essence of the scheme to defraud was for ALFRED CHAN and JUDY CHAN to submit and cause to be submitted fraudulent claims to Health Care Benefit Programs for JCodes and CPT codes corresponding to quantities of drugs and infusion times exceeding the respective drug amounts and infusion times that had been administered to patients.

### B.     The Manner and Means of Scheme to Defraud

34.     During the period covered by this Indictment, ALFRED CHAN and JUDY CHAN systematically submitted false and fraudulent statements to health care benefit programs regarding drugs and services provided to patients, all for the express purpose of wrongfully gaining increased personal wealth.

//

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101−1271
(206) 553-7970

35.     It was part of the scheme and artifice to defraud that after consulting with a patient face-to-face and determining the treatment and drugs to be administered, ALFRED CHAN would write a patient treatment order ("treatment order") on a small blank sheet of paper.  The patient treatment order was handwritten and indicated the patient's first name, sometimes his or her last initial, and an abbreviated list of medications and dosages to be administered to the patient.

36.     It was further part of the scheme and artifice to defraud that ALFRED CHAN would then give the treatment order to his chemotherapy nurse, O.C., who prepared the medications.  O.C. then administered the drugs and specific dosages of drugs to the patient per the instructions on the patient treatment order.

37.     It was further part of the scheme and artifice to defraud that at the completion of each day's treatment, O.C. returned all of the day's treatment orders to ALFRED CHAN.  If the treatment order required additional days of drug administration for the patient, it would be maintained where the chemotherapy drugs were prepared by O.C., and would remain there until all drugs indicated on the patient treatment order had been administered.

38.     It was further part of the scheme and artifice to defraud that after the patient treatment order was returned to ALFRED CHAN, he would fill out a fee slip, commonly referred to as a Superbill.  The Superbill was a pre-printed form which identified ALFRED CHAN, the patient, and lists various CPT Codes, medications, and diagnosis codes.  On the Superbill, ALFRED CHAN would indicate, by circling and/or making handwritten entries, drug amounts administered, injection and/or intravenous medication names, infusion hours, diagnosis codes, among other things, associated with that particular patient's visit for that date of service.

39.     It was further part of the scheme and artifice to defraud that ALFRED CHAN would complete the Superbill showing amounts of various drugs that overstated what had actually been provided to the patient, often by a factor of two, four, and even eight.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101‑1271
(206) 553-7970

40.     It was further part of the scheme and artifice to defraud that ALFRED CHAN would complete the Superbill with CPT codes that overstated the duration of infusion of a particular drug.

41.     In the case of single dose vials, it was further part of the scheme and artifice to defraud that ALFRED CHAN would split single-dose vials of various medications, including, Velcade, among two patients. ALFRED CHAN would then complete the Superbill for each patient as if the remainder of the vial had been discarded, when, in fact, the remaining portion of the drug had been used on another patient, and billed, in full, to both patients.

42.     It was further part of the scheme and artifice to defraud that ALFRED CHAN and JUDY CHAN directed that multiple patients who received Velcade and other drugs contained in single-use vials be scheduled for the same day to facilitate the vial-splitting described in the preceding paragraph.

43.     It was further part of the scheme and artifice to defraud that the Superbill would then be given to the biller for the Clinic, who created the claim to the Health Care Benefit Program using the information contained in the Superbill. During the time period relevant to this Indictment, JUDY CHAN prepared and submitted claims for ALFRED CHAN. As described above, the claims submitted are for greater quantities of drugs than those actually administered, and for longer periods of drug infusion than those actually administered.

44.     It was further part of the scheme and artifice to defraud that ALFRED CHAN would then dictate a chart note for each patient visit. The chart note provided a more detailed description of the patient's visit than the Superbill. The chart note matched the Superbill, for a particular patient, in terms of drugs administered, quantities, and infusion times, and, as described in this Indictment, was inconsistent in certain respects with the patient treatment order, the drug amounts actually administered, and the actual drug infusion times, relating to the same visit. The electronic chart note would then be printed by ALFRED CHAN, and he would usually initial or sign the bottom right corner.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

The printed and signed chart note was filed in the patient's medical record.

45.     It was a further part of the scheme and artifice to defraud that at the end of each day, the patient treatment order for each patient (except those that required additional days of drug administration) was shredded by ALFRED CHAN.

46.     It was a further part of the scheme and artifice to defraud that ALFRED CHAN would and did falsify patients' medical records and put false information on patients' medical charts to cover up his false billing practices.

47.     In or about July 2007, clinic employee D.L. discovered the fraudulent scheme described above and resigned from the Clinic. In resigning from the Clinic, D.L. wrote a letter to M.L., another health care provider working at the Clinic. The letter stated, in part:

> I cannot work in this environment. I have been watching illegal activities take place over the past two months . . .   I discovered Dr. Chan is committing fraud and apparently he has been doing so for a very long time. Not only is he charging patients for services not provided . . . He is also under dosing the medications on the orders written for the nurses . . . [c]harting and billing for a higher dose.

It was further part of the scheme and artifice to defraud that JUDY CHAN and ALFRED CHAN took further steps to conceal the above conduct from potential detection by Clinic staff, Health Care Benefit Program auditing authorities, and others, including but not limited to the following:

(a)     ALFRED CHAN and JUDY CHAN implemented procedures designed to conceal the scheme to defraud by controlling the information recorded in patients' medical records.

(b)     After learning of D.L.'s letter, JUDY CHAN and ALFRED CHAN, on multiple occasions, specifically directed O.C. not to enter any information into patients' charts, and told O.C. that all documentation would be maintained by ALFRED CHAN.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

48.     It was further part of the conspiracy that ALFRED CHAN and JUDY CHAN, by means of the false and fraudulent pretenses, representations, and promises described above, obtained money, funds, and property from Health Care Benefit Programs in the amount of, at least, approximately, one million, seven hundred thousand dollars ($1,700,000), to which they were not entitled.

**C.      Execution of the Scheme to Defraud**

49.     Count One relates to a person who shall be referred to herein as H.G.  In execution of the scheme to defraud, or on about July 11, 2007, within the Western District of Washington ALFRED CHAN and JUDY CHAN caused to be submitted to Medicare a false and fraudulent claim with respect to the treatment of H.G., for the purported date of service of July 11, 2007, and thereby obtained monies owed by and under the custody and control of Medicare, a health care benefit program, to which ALFRED CHAN and JUDY CHAN were not entitled.

50.     Medicare beneficiary H.G. was treated at the clinic on July 11, 2007.  The handwritten patient treatment order for H.G. indicates, "[H.G.] Epo 10K."  This means that patient H.G. was to be treated with 10,000 international units (IU) of epoetin alfa. Epoetin alfa (Brand names Epogen and Procrit) is an injectable drug used to treat anemia, available as a liquid in 2,000 to 40,000 units. The Superbill for H.G.'s visit on July 11, 2007, shows ALFRED CHAN wrote that 20,000 IU of Epogen was administered to patient H.G.  The chart note from H.G.'s medical record maintained at Dr. Chan's clinic, shows ALFRED CHAN wrote that patient H.G. was administered 20,000 IU Procrit on July 11, 2007.  ALFRED CHAN's initials are located at the bottom right corner of the chart note.

51.     ALFRED CHAN and JUDY CHAN submitted or caused to be submitted, a claim for H.G.'s July 11, 2007 visit, with the following code, among others, J0885 (Injection, epoetin alfa, (for non-ESRD use), 1000 units).  The J0885 code was billed for 20 units, corresponding to 20,000 units of epoetin alfa.  For the J0885 code described above, ALFRED CHAN and JUDY CHAN billed Health Care Benefit Programs $200.00

UNITED STATES v. CHAN - INDICTMENT

-13-

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    and were paid $182.08.  If ALFRED CHAN and JUDY CHAN had billed Health Care

2    Benefit Programs for the 10 units that were actually administered to H.G., the total

3    reimbursement would have been $91.04.

4         52.    Additional specific and representative illustrations of the fraudulent scheme

5    of ALFRED CHAN and JUDY CHAN are listed as separate counts, in the following

6    chart:

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES v. CHAN - INDICTMENT

-14-

| Ct | Patient | Date of Service | Health Care Program(s) | Drug and number of billing units administered (actual amount of drug administered in parentheses) | Drug and number of billing units claimed (claimed amount of drug in parenthesis) | Approximate Amount Paid for Claim |
|---|---|---|---|---|---|---|
| 2 | L.S | 1/24/07 | Medicare/ Tricare | Aloxi, 4 units (100 mcg) | Aloxi, 10 units (250 mg) | $166.11 |
| 3 | L.S. | 1/24/07 | Medicare/ Tricare | Avastin, 40 units (400 mg) | Avastin, 80 units (800 mg) | $4,597.44 |
| 4 | L.S. | 1/24/07 | Medicare/ Tricare | Gemzar, 4 units (800 mg) | Gemzar, 9 units (1800 mg) | $1,156.73 |
| 5 | L.S. | 1/24/07 | Medicare/ Tricare | Infed, 1 unit (50 mg) | Infed, 2 units (100 mg) | $23.86 |
| 6 | L.S. | 1/24/07 | Medicare/ Tricare | Taxotere, 2 units (40 mg) | Taxotere, 3 units (60 mg) | $941.12 |
| 7 | K.B | 4/30/09 | Lifewise Health Plan | Infed, 4 units (200 mg) | Infed, 10 units (500 mg) | $89.46 |
| 8 | K.B | 4/30/09 | Lifewise Health Plan | IVIG, 20 units (10,000 mg) | IVIG, 60 units (30,000 mg) | $1,619.10 |
| 9 | C.D | 7/6/07 | Medicare/ Tricare | Aloxi, 4 units (100 mcg) | Aloxi, 10 units (250 mcg) | $166.05 |
| 10 | C.D | 7/6/07 | Medicare/ Tricare | Infed, 2 units (100 mg) | Infed, 4 units (200 mg) | $47.22 |
| 11 | C.D. | 7/6/07 | Medicare/ Tricare | Rituxan, 5 units (500 mg) | Rituxan, 8 units (800 mg) | $3,972.29 |
| 12 | C.W. | 7/11/07 | Medicare/ Opp'g Eng'rs | Epogen/Procrit, 20 units (20,000 iu) | Epogen/Procrit, 60 units (60,000 iu) | $436.99 |
| 13 | C.W. | 7/11/07 | Medicare/ Opp'g Eng'rs | Infed, 2 units (100 mg) | Infed, 4 units (200 mg) | $37.78 |

UNITED STATES v. CHAN - INDICTMENT

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

| Ct | Patient | Date of Service | Health Care Program(s) | Drug and number of billing units administered (actual amount of drug administered in parentheses) | Drug and number of billing units claimed (claimed amount of drug in parenthesis) | Approximate Amount Paid for Claim |
|---|---|---|---|---|---|---|
| 14 | C.W. | 7/12/07 | Medicare/ Opp'g Eng'rs | Infed, 2 units (100 mg) | Infed, 4 units (200 mg) | $37.78 |
| 15 | S.D. | 4/30/09 | Medicare/ Tricare | Infed, 2 units (100 mg) | Infed, 6 units, (300 mg) | $56.82 |
| 16 | B.S. | 5/29/07 | Medicare/ Regence | Infed, 1 unit (50 mg) | Infed, 2 units (100 mg) | $23.44 |
| 17 | B.S. | 5/29/07 | Medicare/ Regence | Epogen/Procrit, 50 units (50,000 iu) | Epogen/Procrit, 80 units (80,000 iu) | $756.16 |
| 18 | B.S. | 5/29/07 | Medicare/ Regence | Aloxi, 2 units (50 mcg) | Aloxi, 10 units (250 mg) | $160.03 |
| 19 | B.S. | 5/29/07 | Medicare/ Regence | Velcade, 17 units (1.7 mg) | Velcade, 35 units (3.5 mg) | $1,143.77 |
| 20 | P.S. | 5/29/07 | Medicare/ BlueCross | Velcade, 18 units (1.8 mg) | Velcade, 35 units (3.5 mg) | $1,143.77 |

UNITED STATES v. CHAN - INDICTMENT

-16-

1   All in violation of Title 18, United States Code, Sections 1347 and 2.

2                          **FORFEITURE ALLEGATION**

3       Upon conviction of the health care fraud offenses alleged in Counts 1-20 of this

4   Indictment, ALFRED CHAN and JUDY CHAN shall forfeit to the United States of

5   America pursuant to Title 18, United States Code, Section 982(a)(7), all property, real and

6   personal, that constitutes or is derived, directly or indirectly, from gross proceeds

7   traceable to the commission of the offense, including but not limited to:

8       A sum of money equal to at least one million, seven hundred thousand dollars

9   ($1,700,000) in United States currency representing the amount of proceeds obtained as a

10  result of the health care fraud offenses.

11      If any of the property described above as being subject to forfeiture as a result of

12  any act or omission of the defendants:

13          a.      Cannot be located upon the exercise of due diligence;

14          b.      Has been transferred or sold to, or deposited with, a third person

15          c.      Has been placed beyond the jurisdiction of the Court;

16          d.      Has been substantially diminished in value, or

17          e.      Has been commingled with other property which cannot be

18  subdivided without difficulty;

19      It is the intent of the United States, pursuant to Title 18, United States Code,

20  Section 982(b)(1), to seek forfeiture of any other property of said defendants up to the

21  value of the above forfeitable property.

22      All in accordance with Title 18, United States Code, Section 982(a)(7).

23

24                              **COUNT 21**
                              **(False Statement)**

25

26          **Background**

27      53.     The Grand Jury realleges paragraphs 1 through 52 as though fully stated

28  herein.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**A.    Chan Family LLCs**

54.    In 2002 and 2004 ALFRED CHAN and Judy Chan established two Limited Liability Companies (LLCs) in Washington State: Chan Family LLC and 2004 Chan Family LLC II, respectively.

55.    At all times relevant to this Indictment, ALFRED CHAN and Judy Chan were members of the LLCs, and each maintained an ownership interest in both LLCs.

56.    At all times from their incorporation through on or about August 15, 2010, Judy Chan was the managing member and registered agent of the Chan Family LLC and 2004 Chan Family LLC II.

**B.    Federal Investigation of ALFRED CHAN and JUDY CHAN**

57.    On or about September 5, 2008 a qui tam complaint was filed under seal in the United States District Court for the Western District of Washington in the matter *United States of America Ex Rel. Ruth L. Ruckman v. Alfred Chan M.D., P.C., Alfred Chan and Judy Chan.*  The complaint alleges, generally, that ALFRED CHAN and Judy Chan submitted false and fraudulent claims for reimbursement to Public Health Care Benefit Programs, in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729 et seq.

58.    Beginning in approximately the fall of 2008 and continuing through the date of this Indictment, law enforcement officers have conducted an extensive criminal investigation and the Civil Division of the Department of Justice conducted a parallel civil investigation related to allegedly false claims submitted by ALFRED CHAN and Judy Chan to health care benefit programs, including, among others, Medicare, Medicaid and TRICARE.

59.    On or about April 30, 2009, federal agents executed a search warrant at the Alfred Chan M.D. P.C. Clinic, located at 6323 111th St. S.W., Lakewood, Washington. Judy Chan and ALFRED CHAN were present at the time of the search warrant and were provided a copy of the warrant affidavit.  At the same time an administrative subpoena was served on ALFRED CHAN.  Through these actions and others, the existence of the criminal and civil investigations, as well as the qui tam Complaint in the

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  matter *United States of America Ex Rel. Ruth L. Ruckman v. Alfred Chan M.D., P.C.,*

2  *Alfred Chan and Judy Chan*, which had been filed under seal in the United States District

3  Court for the Western District of Washington on or about September 5, 2008, became

4  generally known to ALFRED CHAN and Judy Chan.

5       60.     Shortly following the execution of the search warrant, ALFRED CHAN

6  and Judy Chan retained separate counsel to represent them in relation to the government's

7  investigation of the submission of false claims to Health Care Benefit Programs.

8       **C.     Financial Disclosure Statements**

9       61.     At various times beginning no later than June 2009, representatives from

10  the United States Attorney's Office for the Western District of Washington, and Agents

11  from the Department of Health and Human Services, Office of Inspector General, and the

12  Department of Defense, Defense Criminal Investigative Service, met with counsel for

13  ALFRED CHAN and JUDY CHAN.  These government representatives notified counsel

14  for ALFRED CHAN and JUDY CHAN that the government anticipated that the total

15  financial damages the government would be seeking to recover from ALFRED CHAN

16  and JUDY CHAN related to its investigation of alleged health care violations would

17  likely exceed three million dollars ($3,000,000).  This estimate was based on a

18  preliminary and approximate determination of loss to public Health Care Benefit

19  Programs, and the trebling of damages, as is allowed under the Federal False Claims Act,

20  31 U.S.C. § 3729 *et seq.*

21       62.     On or about June 25, 2009, the United States Attorney's Office provided a

22  United States Department of Justice, Financial Disclosure Statement to be Completed by

23  Individual Defendant ("Personal Financial Disclosure") to ALFRED CHAN's then-

24  attorney, to be filled out by ALFRED CHAN in his personal capacity, and a separate

25  form, entitled Financial Statement for Business ("Business Financial Disclosure"), to be

26  completed on behalf of ALFRED CHAN's medical practice, Alfred Chan M.D., P.C.

27  The purpose of the Personal and Business Financial Disclosures was to establish

28  ALFRED CHAN and Judy Chan's net worth, and to identify assets of ALFRED CHAN

1    and Judy Chan available to satisfy future civil and criminal judgments.

2         63.    Both the Personal and Business Financial Disclosures were returned to the

3    United States Attorney's office by ALFRED CHAN, through his counsel, on or about

4    October 27, 2009.

5         64.    At the request of the United States Attorney's Office, updated Personal and

6    Business Financial Disclosures were provided to the United States Attorney's Office by

7    ALFRED CHAN, through counsel, on or about May 17, 2010.

8         65.    The Personal Financial Disclosures contained the following declaration

9    signed under penalty of perjury by ALFRED CHAN:

10        With knowledge of the maximum penalties for false statements provided by
         Title 18 U.S.C. § 1001 [five (5) years imprisonment and/or a fine of not
11       more than $250,000] and with the knowledge that this financial disclosure
         statement is submitted by me to affect action by the United States
12       Department of Justice, I certify that the above responses are all true and
         correct and represent that this is a complete statement of all my income,
13       assets, and liabilities, real and personal, either held in my name or by any
         others, as well as expenses as of this date.

14
15        66.    The Personal Financial Disclosures further stated that:

16        By completing and signing this financial disclosure statement, you
         acknowledge that the information provided will affect action by the United
17       States  Department of Justice and further understand that any false answers
         can lead to the termination or nullification of any payment agreement
18       ultimately reached and/or prosecution for false statements as provided under
         Title 18, United States Code, Section 1001 . . . .

19        67.    The Business Financial Disclosures, related to Alfred H. Chan, M.D., P.C.,

20   were signed by Judy Chan in her capacity as Office Manager for the business.  The

21   Business Financial Disclosures were returned to the United States Attorney's Office the

22   same dates as the personal Financial Disclosures, October 27, 2009, and May 17, 2010,

23   respectively.  The Business Financial Disclosures also contain an explicit certification

24   that the responses contained therein are provided under penalty of perjury.

25        68.    Both of the Personal Financial Disclosures contained the following

26   questions:

27        a.    "Do you or your spouse/companion have any interest in any real

28   estate anywhere in the world? (This includes any real estate currently being sold under

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  contract.)  If YES, identify each real estate interest as stated below." Personal Fin. Discl.

2  Question No. 38.

3              b.       "Name of each bank, credit union and any other financial institution

4  or company with with which you, your spouse/companion, or any other person or entity

5  associated with you have or have ever had any account at any time during the past (5)

6  years." Personal Fin. Discl. Question No. 34.

7              c.       "Does anyone or any entity owe any money to you or your spouse not

8  previously disclosed?  If yes, please state specific information listed below."  Personal

9  Fin. Discl. Question No. 48.

10       69.     On or about October 27, 2009, ALFRED CHAN listed the following real

11  property in response to Question 38 of the Personal Financial Disclosure form: (a) 7235

12  Interlaaken Drive S.W., Lakewood, Washington 98499; (b) 6323 111th St. S.W.,

13  Lakewood, Washington, 98499.

14       70.     In fact, on October 27, 2009, ALFRED CHAN personally owned an interest

15  in, at least, the following additional real property:  (a) condominium, located at 3217

16  Eastlake Ave. E., # 301, Seattle, Washington ("Eastlake Condominium"); (b)

17  condominium, located at 2601 College Ave., # 202, Berkeley, California ("Berkeley

18  Condominium").

19  //

20  //

21  //

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

71.     On or about October 27, 2009, ALFRED CHAN listed the following bank accounts, respective balances, and account owners, in response to Question 34 of the Personal Financial Disclosure Form:

| Account | Stated Balance of Account on October 27, 2009 | Listed Owner |
|---|---|---|
| Key Bank Acct. No. xxxx2592 | $170,000 | Chan Revocable Living Trust |
| Key Bank Acct. No. xxxx2714 | $400,000 | Alfred H. Chan M.D., P.C. |
| U.S. Bank Acct. No. xxxx3510 | $310,000 | Alfred H. Chan M.D., P.C. |
| D.A. Davidson Acct. No. xxxx3303 | $257,900 | Alfred Chan |
| U.S. Bank Acct. No. xxxx8739 | $80,000 | Midland Manor LLC |

72.     In fact, on October 27, 2009 ALFRED CHAN and Judy Chan had an interest in, at least, the following additional bank accounts, which were omitted from the Personal Financial Disclosure Form:

| Account | Approx. Balance of Account October 27, 2009 | Listed Owner |
|---|---|---|
| DA Davidson Account No. xxxx5707 | $208,000 | Chan Family LLC |
| DA Davidson Account No. xxxx5910 | $4,000 | 2004 Chan Family LLC II |
| DA Davidson Account No. xxxx5694 | $130,000 | Chan Family LLC |
| Key Bank Account No. xxxx3427 | $107,000 | 2004 Chan Family LLC II |
| Key Bank Account No. xxxx3435 | $33,000 | Chan Family LLC |

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**The False Statement**

73.    On or about October 27, 2009, in King County, within the Western District of Washington, and elsewhere, in a matter within the jurisdiction of the United States Department of Justice, the defendant ALFRED CHAN did knowingly and willfully falsify, conceal and cover up by trick, scheme, and device, material facts, in that ALFRED CHAN omitted the following real and personal assets from the Personal Financial Disclosure ALFRED CHAN provided to the United States Attorney's Office:

| |
|---|
| Condominium, located at 3217 Eastlake Ave. E., #301, Seattle, Washington |
| Condominium, located at 2601 College Ave., # 202, Berkeley, California |
| DA Davidson Account No. xxxx5707 |
| DA Davidson Account No. xxxx5910 |
| DA Davidson Account No. xxxx5694 |
| Key Bank Account No. xxxx3427 |
| Key Bank Account No. xxxx3435 |

The statements were false because, as ALFRED CHAN well knew, ALFRED CHAN and Judy Chan maintained an interest in the above-listed assets on October 27, 2009.

All in violation of Title 18, United States Code, Section 1001(a)(1).

## COUNT 22
### (False Statement)

74.    The Grand Jury realleges paragraphs 1-73 as though fully stated herein.

75.    On or about May 17, 2010, ALFRED CHAN listed the following real property in response to Paragraph 38 of the Personal Financial Disclosure form: (a) 7235 Interlaaken Drive S.W., Lakewood, Washington 98499; (b) 6323 111th St. S.W., Lakewood, Washington, 98499.

76.    In fact, on May 17, 2010, ALFRED CHAN personally owned an interest in, at least, the following additional real property:  (a) condominium, located at 3217 Eastlake Ave. E., # 301, Seattle, Washington ("Eastlake Condominium").

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

77.     On or about May 17, 2010, ALFRED CHAN listed the following bank accounts, respective balances, and account owners, in response to Paragraph 34 of the Personal Financial Disclosure Form:

| Account | Stated Balance of Account on May 17, 2009 | Listed Owner |
|---|---|---|
| Key Bank Acct. No. xxxx2592 | $50,000 | Chan Revocable Living Trust |
| Key Bank Acct. No. xxxx2714 | $70,000 | Alfred H. Chan M.D., P.C. |
| U.S. Bank Acct. No. xxxx5806 | $8,000 | Alfred H. Chan M.D., P.C. |
| D.A. Davidson Acct. No. xxxx3303 | $149,000 | Alfred Chan |
| U.S. Bank Acct. No. xxxx8737 | $50,000 | Midland Manor LLC |
| U.S. Bank Acct. No. xxxx2962 | $270,000 | Alfred H. Chan M.D., P.C. |

78.     In fact, on May 17, 2010, ALFRED CHAN and Judy Chan had an interest in, at least, the following additional bank accounts, which were omitted from the Personal Financial Disclosure Form:

| Account | Approx. Balance of Account May 17, 2010 | Owner |
|---|---|---|
| DA Davidson Account No. 22095707 | $248,000 | Chan Family LLC |
| DA Davidson Account No. 22095910 | $4,000 | 2004 Chan Family LLC II |
| DA Davidson Account No. 22095694 | $160,000 | Chan Family LLC |
| DA Davidson Account No. 22097297 | $183,000 | Chan Family LLC |
| Key Bank Account No. xxxx0638 | $120,000 | Twenty-Ten LLC |
| Key Bank Account No. xxxx3427 | $84,000 | 2004 Chan Family LLC II |
| Key Bank Account No. xxxx3435 | $85,000 | Chan Family LLC |

79.     On or about May 17, 2010, ALFRED CHAN listed "none" in response to Paragraph 48 of the Personal Financial Disclosure form, which required disclosure of money owed by any person or entity to ALFRED CHAN or Judy Chan.

80.     In fact, on or about March 25, 2010, ALFRED CHAN and Judy Chan granted their interest in the Berkeley Condominium to their daughter C.C.  In return C.C. signed a promissory note to ALFRED CHAN and Judy Chan in the amount of $200,000. This note was due and owing on May 17, 2010 at the time ALFRED CHAN signed the Financial Disclosure form.

### The False Statement

81.     On or about May 17, 2010, in King County, within the Western District of Washington, and elsewhere, in a matter within the jurisdiction of the United States Department of Justice, the defendant ALFRED CHAN did knowingly and willfully falsify, conceal and cover up by trick, scheme, and device, material facts, in that ALFRED CHAN omitted the following real and personal assets from the Personal Financial Disclosure provided by ALFRED CHAN to the United States Attorney's Office:

| |
|---|
| Condominium, located at 3217 Eastlake Ave. E., Seattle, Washington |
| DA Davidson Account No. xxxx5707 |
| DA Davidson Account No. xxxx5910 |
| DA Davidson Account No. xxxx5694 |
| DA Davidson Account No. xxxx7297 |
| Key Bank Account No. xxxx0638 |
| Key Bank Account No. xxxx3427 |
| Key Bank Account No. xxxx3435 |
| Promissory Note from C.C. to ALFRED CHAN and JUDY CHAN in the amount of $200,000 |

The statements were false because, as ALFRED CHAN well knew, ALFRED CHAN and Judy Chan maintained an interest in the above-listed assets on May 17, 2010.

All in violation of Title 18, United States Code, Section 1001(a)(1).

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

## COUNT 23
### (Obstruction of Justice)

82.     The Grand Jury realleges paragraphs 1 through 81 as though fully stated herein.

83.     Between April 30, 2009 and March 1, 2011, in Pierce and King Counties, within the Western District of Washington and elsewhere, ALFRED CHAN and JUDY CHAN did knowingly and corruptly influence, obstruct, impede, and endeavor to influence, obstruct and impede the due and proper administration of justice in *United States of America Ex Rel. Ruth Ruckman v. Alfred Chan, M.D. P.C., Alfred Chan, and Judy Chan*, No. C08-5532-RBL, in the United States District Court for the Western District of Washington.

84.     The defendants' acts of obstruction include, but are not limited to the following:

**A.     Acts of Obstruction Related to Berkeley and Eastlake Condominiums**

85.     As described above in paragraphs 69 and 70, on or about October 27, 2009, ALFRED CHAN submitted a Financial Disclosure to the United States Attorney's Office, under penalty of perjury, omitting the Berkeley condominium, of which he and Judy Chan were then 50% owners.

86.     On or about March 25, 2010, JUDY CHAN directed that $108,700.75 be transferred from an account at DA Davidson in the name of ALFRED CHAN (Acct. No. xxxx3303) to U.S. Bank to pay off the outstanding mortgage on the Berkeley condominium in full.

87.     On or about April 23, 2010, JUDY CHAN and ALFRED CHAN signed a California grant deed transferring their entire interest in the Berkeley Condominium to their daughter, C.C, ostensibly in return for a promissory note from C.C.

88.     As described above in paragraphs 70 and 75, ALFRED CHAN submitted two Personal Financial Disclosures to the United States Attorney's Office, on October 27, 2009 and May 17, 2010, respectively, omitting the Eastlake condominium of which he

1 | was a 50% owner with his son, J.C.

2 | 89.     On or about October 1, 2010, ALFRED CHAN quitclaimed his entire

3 | interest in the Eastlake Condominium to his son, J.C.

4 | **B.     Acts of Obstruction Related to the Chans' Primary Residence**

5 | 90.     On or about May 21, 2009, through their attorneys, ALFRED CHAN and

6 | JUDY CHAN promised not to encumber their primary assets, including their primary

7 | residence located at 7235 Interlaaken Drive S.W., Lakewood, Washington, pending

8 | resolution of the government's investigation related to the submission of false claims to

9 | Health Care Benefit Programs.  At that time, ALFRED CHAN and JUDY CHAN owned

10 | their primary residence free and clear of any mortgage or other liens against the property.

11 | 91.     On or about August 23, 2010, the government learned through a routine

12 | record search that the Chans' primary residence was under contract to be sold, with a

13 | closing date of October 15, 2010.

14 | 92.     Also on August 23, 2010, the government requested to ALFRED CHAN

15 | and JUDY CHAN's attorneys that the proceeds of any sale of the primary residence be

16 | held in escrow to pay ALFRED CHAN and JUDY CHAN's anticipated financial liability.

17 | 93.     On or about August 25, 2010, without notice to the government, JUDY

18 | CHAN withdrew $500,000 on a home equity line of credit secured by the primary

19 | residence and deposited the funds into ALFRED CHAN and JUDY CHAN's personal

20 | account at Key Bank.  Then, on the same day, $500,000 was transferred from the personal

21 | account through two Key Bank accounts in the names of the 2004 Chan Family LLC II

22 | and the Chan Family LLC (both of which were controlled by JUDY CHAN, and neither

23 | of which was disclosed on any Financial Disclosure forms).  Finally, on August 25, 2010,

24 | $500,000 was wired by JUDY CHAN from the Key Bank Chan Family LLC Account

25 | (No. xxxx3435) to K.T.

26 | **C.     Acts of Obstruction Related to International Money Transfers**

27 | 94.     On or about October 27, 2009, as part of the first Personal Financial

28 | Disclosure ALFRED CHAN disclosed an account in his name at DA Davidson

UNITED STATES v. CHAN - INDICTMENT

-27-

(Acct. No. xxxx3303).

95.     In or about May 2010, ALFRED CHAN and JUDY CHAN voluntarily agreed to freeze this account.  On or about June 14, 2010, JUDY CHAN attempted to wire transfer $50,000 to an individual in Taiwan out of a separate DA Davidson account, which had not been disclosed to the government (Acct. No. xxxx5694).  Following the government's discovery of this attempted transfer, ALFRED CHAN and JUDY CHAN agreed to withdraw the transfer request and voluntarily freeze this account.

96.     On or about June 1, 2010, ALFRED CHAN and JUDY CHAN opened three new bank accounts at Cathay Bank and deposited funds from the clinic's operating account and other undisclosed Key Bank accounts.  The new Cathay Bank accounts were not disclosed to the government.  The accounts are in the name of ALFRED CHAN, Chan family LLC, and 2004 Chan Family LLC II.  JUDY CHAN was listed as a signor on all accounts.

97.     Between July 2010 and October 2010, JUDY CHAN directed that approximately $400,000 be transferred by international wire or other means out of these accounts to foreign recipients T.C. and Y-M.Y.

**D.     Acts of Obstruction Related to Chan Family LLCs**

98.     Shortly after the execution of the search warrant on April 30, 2009, the government learned that ALFRED CHAN and JUDY CHAN had established and funded a number of Limited Liability Companies ("LLCs") prior to April 30, 2009.

99.     On or about August 15, 2010, the Managing Member of the Chan Family LLC and the 2004 Chan Family LLC II was switched from JUDY CHAN to her son, J.C..  As of August 15, 2010, the two LLCs held assets of at least $500,000.

All in violation of Title 18, United States Code, Section 1503 and 2.

### Count 24
#### (Money Laundering)

On or about April 23, 2010, within the Western District of Washington and elsewhere, ALFRED CHAN and JUDY CHAN, did knowingly and willfully conduct,

1  attempt to conduct, and aided and abetted a financial transaction affecting interstate

2  commerce, to wit: transfer of title to real property located at 2601 College Ave., Apt. 202,

3  Berkeley, California from ALFRED CHAN and JUDY CHAN to C.C., which transaction

4  involved the proceeds of specified unlawful activity, to wit, health care fraud, in violation

5  of Title 18, United States Code, Section 1347, knowing that the transaction was designed

6  in whole or in part to conceal and disguise the nature, location, source, ownership and

7  control of proceeds from said specified unlawful activity, and while conducting such

8  financial transaction knew that the property involved in the financial transaction

9  represented the proceeds of some form of unlawful activity.

10          All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2.

11                              **FORFEITURE ALLEGATION**

12          Upon conviction of the money laundering offense alleged in Count 24 of this

13  Indictment for violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), the

14  defendants, ALFRED CHAN and JUDY CHAN, shall forfeit to the United States of

15  America pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or

16  personal, involved in such offense, and any property traceable to such property.  The

17  property to be forfeited includes, but is not limited to, the following:

18          Real property located at 2601 College Avenue, Apartment 202, Berkeley,

19  California.

20          If any of the property described above, as a result of any act or omission of the

21  defendants:

22                  a.      cannot be located upon the exercise of due diligence;

23                  b.      has been transferred or sold to, or deposited with, a third party;

24                  c.      has been placed beyond the jurisdiction of the court;

25                  d.      has been substantially diminished in value; or

26                  e.      has been commingled with other property which cannot be divided

27                          without difficulty,

28

UNITED STATES v. CHAN - INDICTMENT

-29-

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All in accordance with Title 18, United States Code, Section 982(a)(1).

A TRUE BILL:

Dated: _____, 2011

*Signature of the Foreperson redacted pursuant to the policy of the Judicial Conference*

FOREPERSON

_____
JENNY A. DURKAN
United States Attorney

_____
CARL BLACKSTONE
Assistant United States Attorney

_____
MATTHEW D. DIGGS
Assistant United States Attorney

_____
MARY K. DIMKE
Assistant United States Attorney

UNITED STATES v. CHAN - INDICTMENT

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970